UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES AUSTIN<br>CDCR # AK-6078,<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT BROWN; FABRICE HADJADJ; J. DAVIES; P. COVELLO,<br><br>        Defendants. | Case No.: 3:18-cv-600-WQH-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>**[ECF No. 12]** |

  James Austin ("Plaintiff"), a prisoner at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding *pro se* and *in forma pauperis* ("IFP") with a complaint ("Compl.") pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (ECF No. 1) against Defendants Brown, Hadjadj, Davies, and Covello ("Defendants"). Plaintiff claims RJD officials violated his right to free exercise of his Buddhist faith under the First Amendment, imposed a substantial burden on the exercise of that faith in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and denied him equal protection of the law under the Fourteenth Amendment. (*Id.* at 9–34.[1]) He seeks

---

[1] The Court will cite to page numbers as assigned by the Court Electronic Case Filing ("ECF") system.

compensatory and punitive damages, "mental and emotional" damages, declaratory relief, and injunctive relief. (*Id.* at 34–36.)

Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff has failed to state a First Amendment, Equal Protection, or RLUIPA claim. (ECF No. 12-1 at 11–17.) Defendants also argue they are entitled to qualified immunity and Plaintiff's state law claims should also be dismissed. (*Id.* at 17–20.) Finally, Defendants seeks to dismiss any claim Plaintiff purports to bring on behalf of other RJD inmates who practice the Buddhist religion. (*Id.* at 19.) Defendants have also filed a request for judicial notice which is **GRANTED**. (ECF No. 12-2.)

Plaintiff sought two extensions of time to respond to Defendants' Motion (ECF Nos. 16, 18), and Magistrate Judge Jill L. Burkhardt granted both extensions (ECF Nos. 17, 19). Plaintiff was given until May 8, 2019 to file his opposition. (ECF No. 19 at 3.) That date has long since passed and Plaintiff has not filed an opposition.

The Court has determined that this Motion is suitable for disposition upon the papers without oral argument and that no Report and Recommendation from Magistrate Judge Burkhardt is necessary. *See* 28 U.S.C. § 636(b)(1)(A); CivLR 72.3(a).

Having considered the papers submitted, and for the reasons discussed below, the Court **GRANTS** in part, and **DENIES** in part, the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## I. Plaintiff's Complaint

Plaintiff alleges that Defendants deprived him and all RJD "prisoner[s] at facilities A, B, C, D, and E of weekly Buddhist services" and failed to provide "adequate accommodations necessary to properly practice [their] Buddhist religion as [it] mandate[s] meditation, chanting[,] and prostration held indoors." (ECF No. 1 at 9.) Plaintiff further alleges that Defendants "have not made any alternative accommodations to guarantee Buddhist weekly services and deny Buddhist inmates of equal chapel access." (*Id.* at 9–10.) Plaintiff claims "[e]ach defendant intentionally act[s] with discrimination against the Buddhist [r]eligion and [its] members." (*Id.* at 10.)

## II. Defendants' Motion to Dismiss

### A. Defendants' Arguments

Defendants seek dismissal of Plaintiff's First Amendment claims because his allegations are "not supported by case law." (Defs.' Mem. of Ps&As in Supp. of Mot. to Dismiss (hereafter "Defs.' Ps&As"), ECF No. 12-1 at 12.) Defendants further claim that Plaintiff has failed to state an Equal Protection claim "because he has not pled any facts showing that less-than-weekly chapel access was intentionally discriminatory." (*Id.* at 14.) In addition, Defendants claim Plaintiff's RLUIPA allegations are insufficient to show that they have "substantially burdened Plaintiff's practice of Buddhism." (*Id.* at 16.) Finally, Defendants claim they are entitled to qualified immunity because Defendants' "reliance" on published Ninth Circuit case law that purportedly contains "virtually identical facts" was "reasonable." (*Id.* at 18.)

### B. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, courts may consider exhibits that are attached to the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (stating that "material which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 429–30 (9th Cir. 1978))). However, exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A] plaintiff can . . . plead himself out of a claim by including . . . details contrary to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96

(9th Cir. 1998) ("[Courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))); *see also Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (stating that courts "may consider facts contained in documents attached to the complaint" to determine whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[A court is] not bound to accept as true a legal conclusion couched as a factual allegation.").

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Twombly*, 550 U.S. at 570 (stating that when a plaintiff has not "nudged [his] claims across

the line from conceivable to plausible, [his] complaint must be dismissed"). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (citing *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)). The rule, however, "applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

### C. First Amendment Claims

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citations omitted) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). The protections of the Free Exercise Clause are triggered when prison officials burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 514 F.3d at 884–85.

A prison regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a First Amendment challenge, however, if it is "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone*, 482 U.S. at 353 (quoting *Turner*, 482 U.S. at 89). In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court considers the following factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89–90; *see also Shakur*, 514 F.3d at 884.

Here, Defendants claim Plaintiff has failed to state a First Amendment claim because "[t]he Ninth Circuit Court of Appeals dispensed of similar claims in *Hartmann v. Cal. Dep't of Corr. [&] Rehab.*, 707 F.3d 1114 (9th Cir. 2013)." (Defs.' Ps&As, ECF No. 12-1 at 13.) In his Complaint, Plaintiff alleges that Buddhist inmates "have not had weekly Buddhist services for . . . over [six] months." (Compl., ECF No. 1 at 19.) In 2017, Plaintiff alleges that there were no Buddhist services for four of the weeks in March through April and for five of the weeks in July through August, with only one week of service in August. (*See id.* at 19–21.) In 2018, Plaintiff alleges that there were "six [M]ondays in a row without service" from January 1 through February 5. (*Id.* at 21.)

Defendants cite to *Hartmann* for the finding that "[t]he Free Exercise Clause does not require prison administration to provide Plaintiffs with more than that which they are currently receiving – i.e. the services of staff chaplains and a volunteer Wiccan chaplain." (Defs.' Ps&As, ECF No. 12-1 at 13 (quoting *Hartmann*, 707 F.3d at 1123).) Here, *Hartmann* is distinguishable because Plaintiff is alleging that he is *not* receiving the services of staff chaplains or any volunteers. Defendants also claim, without citation, that "[t]he Free Exercise Clause simply does not require prison administration to provide for

weekly chapel access." (*Id.* at 14.) Here, Plaintiff alleges that he did not receive Buddhist services for six consecutive weeks, which falls short of weekly access. (Compl., ECF No. 1 at 21.)

As stated above, the Free Exercise Clause is triggered when prison officials burden the practice of an inmate's religion be preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884. Defendants contend that Plaintiff "fails to describe any affirmative burden on his practice of Buddhism" when Defendant Hadjadj "arrives late" or "fails to show." (Defs.' Ps&As, ECF No. 12-1 at 14.) So long as Plaintiff alleges to have had the exercise of his belief, which is "sincere" and "rooted in religio[n]," burdened by Defendants' actions, the First Amendment applies. *Shakur*, 514 F.3d at 885. Plaintiff alleges in his Complaint that his Buddhist faith "mandate[s] meditation, chanting, and prostration which are held indoors." (Compl., ECF No. 1 at 24.) Plaintiff further claims that "chapel access is necessary, and the chapel is needed to improve meditation with the assistance of other Buddhist practitioners." (*Id.*) In fact, Plaintiff appears to allege that access to any indoor space is necessary, not necessarily the chapel, but Defendants "failed to provide any alternative indoor accommodations." (*Id.* at 26.)

For these reasons, the Court finds that Plaintiff's Complaint alleges facts sufficient to show that his free exercise rights were sufficiently "impinged upon" to justify First Amendment protection. *Shakur*, 514 F.3d at 884. Defendants' Motion to Dismiss Plaintiff's First Amendment claims is **DENIED**.

### D. Equal Protection Claims

Defendants also seek to dismiss Plaintiff's Fourteenth Amendment claims under the Equal Protection Clause. (Defs.' Ps&As, ECF No. 12-1 at 14.) Specifically, Defendants argue that Plaintiff has not alleged facts "showing that less-than-weekly chapel access was intentionally discriminatory." (*Id.*)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). Specifically, the Equal Protection Clause of the Fourteenth Amendment protects prisoners from intentional discrimination based on their religious beliefs. *Freeman*, 125 F.3d at 737. "Prisons must afford an inmate of a minority religion 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)).

However, conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, unless they are supported by facts that may prove invidious discriminatory intent or purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citing *Stones v. L.A. Cmty. Coll. Dist.*, 796 F.2d 270, 275 (9th Cir. 1986); *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985), *amended by* 784 F.2d 1407 (9th Cir. 1986)). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation and footnote omitted).

Plaintiff alleges that Defendants "intentionally discriminated against Plaintiff and other Buddhist prisoners" when they "provided weekly chaplain supervision to other similarly situated religious group[s] but not Buddhists." (Compl., ECF No. 1 at 33.) Defendants argue that Plaintiff's "barebone allegation" is insufficient to "describe discriminatory intent." (Defs. Ps&As, ECF No. 12-1 at 15.) The Court agrees that Plaintiff's equal protection claim fails to provide sufficient facts to show intentional discrimination. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

Accordingly, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claims is **GRANTED**.

### E. RLUIPA Claims

"The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, requires the government to meet a higher burden of proof than the rational basis standard of *Turner*." *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1209 n.19 (9th Cir. 2008). "Recognizing the significance of religious freedom in all aspects of life, Congress passed . . . [RLUIPA] to 'protect[] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.'" *Khatib v. Cty. of Orange*, 639 F.3d 898, 900 (9th Cir. 2011) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005)).

RLUIPA prevents states from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the state can establish that the burden: "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* at 902 (quoting 42 U.S.C. § 2000cc-1(a)). In analyzing a RLUIPA claim, the court "must begin by identifying the 'religious exercise' allegedly impinged upon." *Greene v. Solano Cty. Jail*, 513 F.3d 982, 987 (9th Cir. 2008). Next, the court "ask[s] whether the prison regulation at issue 'substantially burdens' that religious exercise." *Id.* In order to establish a "substantial burden," the relevant restriction must have "denie[d] an important benefit [derived from] conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *see also Warsoldier*, 418 F.3d at 995 ("[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004))). Under RLUIPA, the

plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim that the [challenged state action] . . . constitute[s] a substantial burden on the exercise of his religious beliefs." *Warsoldier*, 418 F.3d at 994.

Here, Defendants argue that Plaintiff has failed to allege a substantial burden on his religious exercise. (Defs.' Ps&As, ECF No. 12-1 at 16–17.) Specifically, Defendants argue "Plaintiff's pursuit of Buddhism has been accommodated—just not as much as he would like." (*Id.* at 16.) However, that is not an accurate description of the allegations made by Plaintiff. As stated above, Plaintiff describes the need for Buddhist prisoners to have access to an indoor space to practice their "mandatory meditation, chantin[g], and prostration." (Compl., ECF No. 1 at 30.) Plaintiff also alleges that for six consecutive weeks, Buddhist inmates did not have access to the prison chapel. (*Id.* at 21.) He further alleges that alternative indoor spaces were available for Buddhist services, but Defendants failed to accommodate the Buddhist inmates. (*Id.* 26, 29–30.) Plaintiff states that "without a chaplain, or Buddhist volunteer supervision," Defendants "would not allow Buddhist services." (*Id.* at 32.) Plaintiff contends that there have not been weekly Buddhist services for "over [six] months." (*Id.* at 19.) Therefore, the Court finds that Plaintiff has adequately alleged facts to show that the alleged actions by Defendants constitute a substantial burden on the exercise of his religious beliefs.

Accordingly, Defendants' Motion to Dismiss Plaintiff's RLUIPA claims is **DENIED**.

### F. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly

established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The qualified immunity "inquiry . . . must be undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201. In this case, the right still at issue is Plaintiff's free exercise of his religion without imposing a substantial burden on this exercise. *See Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (quoting *Saucier*, 533 U.S. at 202).

In support of their argument for qualified immunity, Defendants argue that the *Hartmann* case "had been published for three years" at the time the events in the Complaint occurred. (Defs.' Ps&As, ECF No. 12-1 at 18.) Defendants also argue that *Hartmann* "contains virtually identical facts" and thus, it was "reasonable" for Defendants to rely on *Hartmann* when they "made the decision to allow Buddhist inmates chapel access on a less-than-weekly basis . . . due to [Defendant] Hadjadj's availability." (*Id.*)

However, the facts in *Hartmann* are distinguishable from the facts alleged in this case. In *Hartmann*, the plaintiffs were seeking a "paid full-time Wiccan chaplain." 707 F.3d at 1122. The Ninth Circuit found that "it is well-settled that the First Amendment does not require prison administration to provide inmates with the chaplain of their choice." *Id.* (citing *Cruz*, 405 U.S. at 322 n.2). In Plaintiff's Complaint, however, he alleges that Defendants refused to provide *any* chaplain or *any* volunteer to provide "supervision for weekly Buddhist service[s]." (Compl., ECF No. 1 at 25.) Nowhere in Plaintiff's Complaint is he seeking the sole relief in the form of hiring a fulltime Buddhist chaplain. Moreover, in *Hartmann*, the plaintiffs were already receiving "the services of staff chaplains and a volunteer Wiccan chaplain." 707 F.3d at 1123. By comparison, Plaintiff is alleging in this matter that Buddhist inmates were denied total access to Buddhist services for a six-week period because there was no chaplain or volunteer made available

and that they have not had weekly Buddhist services for "over [six] months." (Compl., ECF No. 1 at 19, 21.)

Thus, although the Court notes "a resolution of the factual issues may well relieve [Defendants] of any liability in this case," *Clement*, 298 F.3d at 906, *Saucier* instructs the Court at this stage of the proceedings to presume Plaintiff's well-pleaded facts are true, *Saucier*, 533 U.S. at 201. Assuming they are, this Court finds both that Plaintiff has sufficiently alleged a First Amendment and RLUIPA violation as to Defendants and that it would be clear to reasonable officers in Defendants' positions that to deny Plaintiff the right to participate in group worship, in light of only the circumstances as they are currently alleged, would violate clearly established law. *Id.* at 202.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint on qualified immunity grounds is **DENIED**.

### G. Representation of Others

Defendants also seek to dismiss any claim Plaintiff brings on behalf of other persons. Specifically, they contend that "Plaintiff is attempting to maintain a class action on behalf of inmates at RJD." (Defs.' Ps&As, ECF No. 12-1 at 19.) Defendants are correct that Plaintiff, as a *pro se* litigant, is not permitted to bring claims on behalf of others in a representative capacity. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

Accordingly, Defendants' Motion to Dismiss Plaintiff's class action claims is **GRANTED**.

### H. State Law Claims

In his Complaint, Plaintiff purports to bring claims against Defendants on the grounds that they "violate and fail to comply with the requirements of state law, including but not limited to California Penal Code[s] 5009, 5054, and 5058, and Title 15, Cal. Regulation Code §§ 3210, 3211, 3212, 3213, [and] 42 U.S.C. §§ 2000cc, *et seq.*" (Compl., ECF No. 1 at 11.)

To the extent that Plaintiff seeks a separate cause of action to bring claims as a purported violation of Title 15, there is no independent cause of action under § 1983 for a

violation of Title 15 regulations. *See, e.g.*, *Parra v. Hernandez*, No. 08CV0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [§] 1983 offers no redress." *Sweaney v. Ada Cty.*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)); *see also Davis v. Kissinger*, 2009 WL 256574, *12 n.4 (E.D. Cal. Feb. 3, 2009) ("[T]here is not a single reported state or federal case permitting an independent cause of action pursuant to these regulations [Cal. Code Regs. tit. 15, § 3268]"). Similarly, there is no liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

To the extent that Plaintiff seeks to bring private causes of action arising from California penal code sections, the Court also agrees that he has not stated a claim. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (holding that there is no private right of action for violation of criminal statutes).

Therefore, Defendants' Motion to Dismiss any claims presented in this action for violation of state criminal law or regulations is **GRANTED**, and any such claims are dismissed with prejudice.

### III. Conclusion and Orders

For all the reasons discussed, the Court:

1) **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claims without prejudice pursuant to Fed. R. Civ. P. 12(b)(6);

2) **GRANTS** Defendants' Motion to Dismiss Plaintiff's state law claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6);

3) **GRANTS** Defendants' Motion to Dismiss to the extent Plaintiff seeks to litigate claims of others in a representative capacity;

4) **DENIES** Defendants' Motion to Dismiss Plaintiff's First Amendment and RLUIPA claims pursuant to Fed. R. Civ. P. 12(b)(6);

5) **DENIES** Defendants' Motion to Dismiss Plaintiff's claims on qualified immunity grounds pursuant to Fed. R. Civ. P. 12(b)(6); and

Defendants will serve and file an Answer to the remaining claims in Plaintiff's Complaint within the time set forth in Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: July 3, 2019

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court